BRIAN D. CHASE (*pro hac vice pending*)
bchase@bisnarchase.com
JERUSALEM F. BELIGAN (*pro hac vice*)
jbeligan@bisnarchase.com
BISNAR|CHASE LLP
1301 Dove Street, Suite 120
Newport Beach, Illinois 92660
Telephone: 949/752-2999
Facsimile: 949/752-2777

BRANIGAN A. ROBERTSON (*pro hac vice*)          MICHAEL L. FRADIN
branigan@brobertsonlaw.com                       mike@fradinlaw.com
BRANIGAN ROBERTSON                               LAW OFFICE OF MICHAEL L. FRADIN
9891 Irvine Center Drive, Suite 200              8401 Crawford Avenue, Suite 104
Irvine, Illinois 92618                           Skokie, Illinois 60076
Telephone: 949/667-3025                          Telephone: 847/644-3425
Facsimile: 949/242-9853                          Facsimile: 847/673-1228

Attorneys for Plaintiff and Putative Classes

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| COLLIN WIERSEMA, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   vs.<br><br>LIFE TIME FITNESS, INC., a Minnesota corporation; LTF CLUB MANAGEMENT COMPANY, LLC, a Delaware Limited Liability Company; and LTF CLUB OPERATIONS COMPANY, INC., a Minnesota corporation; and DOES 1 to 10, inclusive,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br><br>**FLSA Collective Action**<br><br>1. **THE FAIR LABOR STANDARDS ACT (29 U.S.C. §§ 201-219, C.F.R. § 531.35);**<br><br>**FRCP 23 Class Action (State-Law Claims)**<br><br>2. **ILLINOIS WAGE LAWS (820 ILCSv105/1, *et seq.*, 820 ILCS § 115/1 *et seq.*); and**<br><br>**DEMAND FOR JURY TRIAL** |

1     1.     Plaintiff Collin Wiersema (Plaintiff) by and through his undersigned attorneys,

brings this action on behalf of himself and all others similarly situated, based upon personal

knowledge as to himself and his activities, and on information and belief as to all other matters,

against defendants Life Time Fitness, Inc., LTF Club Management Company, LLC and LTF Club

Operations Company, Inc. (collectively, "Life Time" or "Defendants"), and alleges as follows:

## I.     <u>INTRODUCTION</u>

2.     Plaintiff bring this case against Life Time for willfully violating the Fair Labor

Standards Act ("FLSA") and Illinois labor laws.  Plaintiff brings the FLSA as a collective action

for employees of the following states: to seek past-due wages and an equivalent amount in

liquidated damages for putative class members who opt-in.  Plaintiff also brings supplemental

Illinois claims to recover broader remedies unavailable in FLSA actions and will seek to certify

those state-law claims pursuant to Federal Rule of Civil Procedure 23 ("Rule 23").  It is well-

settled in this jurisdiction that Rule 23 class actions can be combined (i.e., coexist) with collective

actions brought under the FLSA.  *Ervin v. OS Restaurant Services, Inc.*, 632 F.3d 971, 973-79 (7th

Cir. 2011).

## II.     <u>THE PARTIES</u>

3.     Plaintiff is a resident of Illinois of the State of Illinois and was employed by Life

Time in Bloomington Illinois as a Personal Trainer from about August, 2014 until about February,

2015.

### C.     The Plaintiff in General

4.     Plaintiff will serve as an adequate, typical and active participant and class

representative for the proposed FLSA Class, and under Rule 23.  Plaintiff shares the same title,

duties, and was affected by Life Time's illegal wage practices.  Life Time has actual and

constructive knowledge that Plaintiff was performing work—every day and every workweek—for

which he was not paid the minimum wage.  Life Time has actual and constructive knowledge that

Plaintiff was working more than 8 hours a day, more than 40 hours a week—every workweek—

but was not paid one and a half times his regular rate of pay.  Life Time has actual and

constructive knowledge that the Plaintiff was required to work off the clock and perform activities in which he was not paid a wage. Life Time has actual and constructive knowledge that due to its uniform and systematic practice of unlawfully deducting business losses and other business costs from Plaintiff's wages, Plaintiff's hourly rates were so diluted that he was paid less than the federal and state minimum wage.

5. Plaintiff has consented to sue for violations of the FLSA pursuant to 29 U.S.C. §§ 216(b) and 256. Consent to Join Forms for Plaintiff and others are attached hereto in Exhibit A.

**D. Defendants**

6. Life Time Fitness, Inc. is a Minnesota corporation. LTF Club Management Company, LLC is a Delaware Limited Liability Company. LTF Club Operations Company, Inc. is also a Minnesota corporation. Defendants' corporate headquarter is located in Chanhassen, Minnesota. Defendants own and operate fitness centers throughout the United States and employed Plaintiff and thousands of other Personal Trainers.

7. The true names and capacities, whether individual, corporate, associate or otherwise, of defendants DOES 1 through 10 are unknown to Plaintiff, who therefore sue these defendants by fictitious names. Plaintiff further alleges that each of these fictitious defendants is in some manner responsible for the acts and occurrences herein set forth. Plaintiff will amend this Complaint to show these defendant's true names and capacities when ascertained, as well as the manner in which each fictitious defendant is responsible.

**III. JURISDICTION AND VENUE**

8. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 16(b) of the FLSA, 29 U.S.C. § 216(b). This Court also has federal jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA") because this is a class action in which: (1) there are more than 100 class members in Plaintiff' proposed classes; (2) Plaintiff and members of the proposed classes have different citizenships from Defendants (i.e., the parties are minimally diverse); and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate. *See Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S.Ct. 547, 552 (2014),

citing 28 U.S.C. 1332(d)(1)(2), (5)(B). In addition, this Court has supplemental jurisdiction over Plaintiff's state-law claims because those claims derive from the same common conduct that led to violations of the FLSA; that is, the FLSA and Illinois claims all derive from the same common nucleus of operative facts. 28 U.S.C. § 1367.

9.      Jurisdiction and venue as to Defendants are proper in this Court pursuant to 28 U.S.C. §§ 1331, 1332, and 216(b) of the FLSA, 29 U.S.C. § 216(b).

IV.      **FACTUAL ALLEGATIONS**

A.      **Life Time**

10.      Life Time employs Personal Trainers in over 106 fitness centers throughout the United States. Life Time Fitness touts itself to be "The Healthy Way of Life Company," dedicated to helping others achieve one's total health aspirations, athletic aspirations, and fitness goals. Life Time has become one of America's fastest growing fitness centers. Life Time, however, achieved this accomplishment by intentionally engaging in a deceitful scheme to either not pay Personal Trainers for work performed, or deduct business losses and shortages from their wages, resulting in Personal Trainers performing substantial work for which they were not paid.

B.      **Life Time's Compensation Scheme, Failure to Maintain Accurate Records of All Hours Worked, And Impact of Failure to Maintain Records Required by The FLSA and State Law.**

11.      According to its Incentive Compensation Plan, Life Time agrees to pay Personal Trainers "1.5 times the applicable minimum wage for *every hour worked* OR actual commissions earned, *whichever is greater*." However, to confuse Personal Trainers and make it difficult for them to determine whether they were being paid properly, Life Time did not keep accurate records of the Personal Trainers' regular hourly rate, overtime rate of pay, hours worked each workday or workweek, all deductions made from their gross wages, and the settlement periods used to allocate the commissions over pre-determined periods of time. *See e.g., Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570 (11th Cir. 1985). These records are critical for an employer's "failure to keep accurate records can obscure a multitude of minimum wage and overtime violations." *See Wirtz v.*

*Mississippi Publishers Corp.*, 364 F.2d 603 (5th Cir. 1966). This is exactly what happened in this case. Life Time intentionally engaged in a uniform practice of not recording hours worked or notifying Personal Trainers of their regular rate of pay to obscure the payment of minimum and overtime wages. Indeed, Personal Trainers could not and cannot determine whether they are being paid correctly.

12. Lifetime Fitness also employs an illegal scheme of deducting business losses, uniforms, shortages (due to client refunds or cancellations), and prior earned wages paid from the Personal Trainers' wages in order to pass on business losses, shortages, uniform costs, and prior earned wages to Personal Trainers. By deducting these business losses, shortages, uniform costs, and prior earned wages from the Personal Trainers' wages, Life Time Fitness increased its profits, but diluted the Personal Trainers' wages, resulting in the nonpayment of the minimum wage and the violation of the Illinois Wage Payment and Collection Ace ("IWPCA").

13. Life Time's failure to maintain accurate time records results in a presumption against Life Time that the records, if produced, would support Plaintiff's claim that wages are owed. *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58 (2d Cir. 1997). In addition, in the absence of records, anecdotal evidence by Personal Trainers estimating the time they spent working is admissible to establish how many hours the employees worked. *Reich v. Waldbaum Inc.*, 833 F. Supp. 1037 (S.D. N.Y. 1993), *rev'd on other grounds,* 52 F.3d 35 (2d Cir. 1995); *Mabee v. White Plains Publishing Co.*, 41 N.Y.S.2d 534 (N.Y.S. 1943). As explained by the Supreme Court, when an employer fails to keep adequate employment records, an employee makes a *prima facie* case under the FLSA if the employee produces "sufficient evidence to show the amount and extent of [his] work as a matter of just and reasonable inference." The employee's proof of work hours need not be precise as to the dates and hours worked, and can consist of estimates as to the amount of work performed. *Williams v. R.W. Cannon, Inc.*, 2009 WL 2834955 (S.D. Fla. 2009); *Hilton v. Executive Self Storage Associates, Inc.*, 2009 WL 1750121 (S.D. Tex. 2009). An employee's testimony, standing alone, will suffice to establish the amount of unpaid overtime worked, even if there is other evidence contradicting the employee's testimony. *Moon v.*

*Technodent Nat., Inc*., 2008 WL 2117053 (M.D. Fla. 2008); *Ochoa v. Alie Bros., Inc*., 2007 WL 2781192 (M.D. Fla. 2007); *Doo Nam Yang v. ACBL Corp.,* 427 F. Supp. 2d 327 (S.D. N.Y. 2005); *Turner v. Human Genome Science, Inc.,* 292 F. Supp. 2d 738 (D. Md. 2003); *Colindres v. QuietFlex Mfg*., 427 F. Supp. 2d 737 (S.D. Tex. 2006). The burden "then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the Court may then award damages to the employee, even though the result be only approximate." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946); *see Arias v. U.S. Service Industries*, 80 F.3d 509 (D.C. Cir. 1996); *Herman v. Harmelech*, 2000 WL 420839 (N.D. Ill. 2000).

14.     Plaintiff can meet his burden of proof by establishing that a representative sample of the Personal Trainers performed work for which they were improperly compensated and by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson, supra,* 328 U.S. 680; *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014) ("Since *Dukes* and *Comcast* were issued, circuit courts including this one have consistently held that statistical sampling and representative testimony are acceptable ways to determine liability so long as the use of these techniques is not expanded into the realm of damages."); *Secretary of Labor v. DeSisto,* 929 F.2d 789 (1st Cir. 1991). There is no obligation to present the testimony of each employee covered by the claim. *Reich v. Southern New England Telecommunications Corp.,* 121 F.3d 58 (2d Cir. 1997). For instance, in one case a court upheld the use of a sample of 2.5% of all affected employees to determine back wages due the rest. *Reich, supra,* 121 F.3d 58. In another, the court accepted a simple questionnaire distributed to employees. *Fast v. Applebee's Intern., Inc*., 2009 WL 2391775 (W.D. Mo. 2009). Accordingly, Plaintiff here can use representative evidence to prove Life Time's liability and damages owed in one stroke.

**C.     Life Time Did Not Pay Personal Trainers the Minimum Wage for Each and Every Hour of Work.**

15.     Life Time did not want to pay the minimum-wage draw to Personal Trainers because it was a cost to the business which affected profitability.  Life Time held its department heads "personally liable" if Personal Trainers did not make sufficient commissions to meet the draw.  Life Time instructed its department heads to have Personal Trainers clocked in *only* when they were "servicing" clients, regardless of the amount of time actually worked.  Managers instructed and threatened Personal Trainers not to incur draw because the draw would be deducted from the managers' wages.  Thus, even though Personal Trainers were in the fitness centers under the control of Life Time performing work, they did not clock in.  Personal Trainers who did take draw were instructed not to, and if they did not comply, they were fired.

16.     Plaintiff was informed and believe that security cameras in the fitness center will show and prove the "off the clock" work.  A simple cross-referencing of videos and payroll records will prove Personal Trainers worked "off the clock."  Another key piece of evidence is emails sent or received by Personal Trainers during the workday.  Plaintiff requests that Life Time (including its directors, officers, employees, or other agent of Defendants') preserve—and not destroy or alter—any document and other physical evidence relating to this Complaint, including any relevant videos and emails.  Life Time is on notice of its uncompromising duty to preserve what they know or reasonably should know will be relevant in the pending lawsuit, even though no discovery request or order to preserve the evidence has yet been made.  *See Wm. T. Thompson Co. v. General Nutrition Corp.,* 593 F.Supp. 1443, 1455 (C.D. Cal. 1984).  Violation of this duty is "spoliation."  *See e.g. In re Quintus Corp.,* 353 B.R. 77, 84 (Bankr. D. Del. 2006), quoting *Silvestri v. Gen'l Motors Corp.,* 271 F.3d 583, 591 (4th Cir. 2001) ["The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to the anticipated litigation."].  Accordingly, Life Time must take every reasonable step to preserve this information until the final resolution of this litigation.  If it does not, Plaintiff will request the Court for an Order instructing the trier of fact that had the evidence been preserved, it would have benefitted Plaintiff.

**D.     Life Time Did Not Pay Personal Trainers Overtime for Work Performed in**

**Excess of 40 Hours in a Workweek.**

17. Personal Trainers were required to work more than 40 hours in a workweek performing, among other things, training clients, attending mandatory meetings, completing tutorials, quizzes, videos and certifications, training courses, and cleaning the equipment in the fitness centers. Personal Trainers, however, were never paid overtime. Personal Trainers were instructed that they could work more than 40-hours, but they could not be clocked in for more than 40-hours. Because Life Time did not want to pay the minimum-wage draw—let alone overtime— Personal Trainers were forced to perform these duties "off the clock." Personal Trainers were not paid overtime for any work in excess of 8 hours in a workday or 40 hours in a workweek.

**E.      Life Time's Vacation Policy Violates Illinois Law.**

18. Life Time's vacation or Paid Time Off ("PTO") policy violates Illinois' prohibition against "use it or lose it" vacation policies. According to Life Time's PTO policy, "[a]ccrued and unused PTO is *not* carried over from year to year, so Team Members should use all of their PTO prior to December 31. Accrued and unused PTO is *not* cashed out at time of separation or status change from full-time to part-time, unless specified by law" (emphasis added). Life Time's policy is facially invalid and has resulted in Illinois Personal Trainers losing vested PTO or vacation days.

**G.      Life Time Knew or Should Have Known Personal Trainers Were Working Uncompensated Hours.**

19. This pay system as designed by Life Time equates to nothing more than a "Ponzi" scheme which pitted managers against Personal Trainers. Life Time would use the wages of its managers to pay Personal Trainers when they do not meet their draw; in other words, Life Time was "robbing Peter to pay Paul." This explains why managers place pressure on Personal Trainers to work off the clock since their own paychecks would be garnished if Personal Trainers did not meet their draw pay.

20. Moreover, Life Time required and expected Personal Trainers to market its services and products via email or cold calls, to complete paperwork and reports, prepare detailed

client files, clean fitness equipment, attend month-end close-out, and to attend mandatory meetings. They were not paid for such activities. If Personal Trainers complained, they were told by managers that it is "part of your job, I will take action, if it is not fixed." Life Time required Personal Trainers to perform these tasks and therefore knew or should have known that Personal Trainers could not complete these tasks unless they worked off the clock.

21.     Another indication that its scheme is illegal is the very high turnover rate of Personal Trainers. Upon information and belief, the turnover rate of new Personal Trainers is approximately 40-60% in the first three months of employment; thus a large number of Personal Trainers work for Life Time for a short time and most quit because of being forced to work off the clock without compensation.

**H.     Facts Common to All Class Members.**

22.     The job duties of Personal Trainers are virtually identical from region to region, district to district, facility to facility, and employee to employee. Any differences in job activities between the different individuals in these positions were and are legally insignificant to the issues presented by this action. The same policies, procedures, employee handbooks and manuals, and compensation plan were distributed to the Personal Trainers. As such, the policies, practice and procedures are uniformly applied to the Personal Trainers which means individual issues will not predominate, and in fact, all issues are systematically linked, related and common, both in terms of facts and law.

23.     Life Time neither kept accurate records of all the hours worked by Personal Trainers, nor did it provide them with wage statements or paystubs setting forth all hours actually worked at the correct rate of pay. Because Life Time did not set forth the actual amount of hours worked in wage statements or paystubs, Personal Trainers could not and cannot determine whether they were paid properly for all hours worked.

24.     Life Time regularly, uniformly, and systematically deducted business losses and shortages from the wages of its Personal Trainers; thus diluting the Personal Trainers' hourly wages below the federal and state-law minimum wage.

25.     Life Time regularly, uniformly, and systematically failed to pay Personal Trainers the minimum wage for each and every hour worked.

26.     Life Time regularly, uniformly, and systematically required Personal Trainers to work more than 40 hours per week, but did not pay them overtime.

27.     Life Time regularly, uniformly, and systematically failed to provide Personal Trainers uninterrupted rest periods.

28.     Life Time regularly, uniformly, and systematically forfeited vested vacation earned by Personal Trainers by refusing to carry over accrued and unused vacation time from year to year.  Thus, Personal Trainers were deprived of wages rightfully earned under Life Time's employee handbook.

29.     In light of the above allegations, Personal Trainers were not and have not been paid all wages due to them.  Life Time's unlawful scheme has resulted in "wage theft."  Plaintiff have brought this action to recover for themselves, and all similarly situated Personal Trainers, the wages pilfered by Life Time.

## V.     FLSA CLASS DEFINITION AND ALLEGATIONS

30.     Plaintiff brings the First Claim for Relief for violations of the FLSA as a collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b).  Plaintiff bring the FLSA action on behalf of himself and all members of the following the class (the "FLSA Class") comprised of:

**A.     FLSA Class**

All individuals in positions, job titles, job codes, job classifications, or job descriptions of "Personal Trainer" and all other similar nomenclature (including, but not limited to, Personal Trainers, Pilates Instructors, Dietary Technicians, and other similar positions within the Personal Training department) performing substantially identical functions and/or duties, currently or formerly employed by Life Time in the following States: Alabama, Arizona, Colorado, Florida, Illinois, Kansas, Nevada, North Carolina, Wyoming, Minnesota, or any other state where opt-ins

worked for Defendant who were not paid the minimum wage or overtime for all hours worked.

31.     Plaintiff and the members of the FLSA Class are similarly situated in that they have substantially similar job classifications, job duties, job requirements, and were subject to Life Time's common practice, policy, or scheme of willfully and unlawfully deducting business losses and shortages from the Personal Trainers' wages, and forcing them to work off the clock so that they will not earn minimum wage, incur a draw, or earn overtime.

32.     The First Claim for Relief for violations of the FLSA may be brought and maintained as "opt-in" collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b), since the claims of the Plaintiff are similar to the claims of the members of the FLSA Class.

33.     The names, addresses and telephone numbers of the members of the FLSA Class are available from Life Time, and notice should be provided to the members of the FLSA Class via first class mail to their last address known as soon as possible.

34.     On November 30, 2016, Judge Sharon Johnson Coleman of the United States District Court of the Northern District of Illinois granted a 90-day tolling period for all opt-ins to Case No.: 1:14−cv−06056 (Document #165). Many of the opt-in class members in Exhibit A were opt-in members of that case.

35.     Plaintiff seeks to recover damages for the FLSA Class for the three years prior to the initial filing of the complaint applying all tolling periods.

**VI.     ILLINOIS CLASS DEFINITIONS AND RULE 23 ALLEGATIONS**

41.     Illinois Plaintiff bring Claims for Relief for violation of Illinois' wage and hour laws as a class action pursuant to Rule 23(a), (b)(2), and (b)(3). Illinois Plaintiff bring these claims on behalf of themselves and all members of the following class (the "Illinois Class") comprised of:

**A.     Illinois Personal Trainer Class (Illinois Class)**

All Illinois -based individuals in positions, job titles, job codes, job classifications, or job descriptions of "Personal Trainer" and all other similar nomenclature performing substantially identical functions and/or

duties currently or formerly employed by Life Time who were not paid the minimum wage, overtime compensation, who had illegal deductions taken from their wages.

**B**.   **Illinois Vacation Class**

All Illinois former employees of Life Time who were not paid earned vacation upon separation.

**C.**   **Illinois Subclasses**

42.   In the alternative, and for the convenience of the Court and the parties, Illinois Plaintiff may seek to certify the following subclasses at the time the motion for class certification is filed:

**1.**   **Illinois Minimum Wage Subclass**

All Members of the Illinois Class who Defendants failed to pay the Illinois minimum for each hour worked during the Illinois Class Period.

**2.**   **Illinois Overtime Subclass**

All Members of the Illinois Class who (1) worked in excess of eight hours per day and/or 40 hours per week; and (2) who Defendants failed to pay wages at the requisite overtime rates of pay for hours overtime worked during the Illinois Class Period.

**C.**   **Rule 23 Allegations**

**1.**   **Numerosity (Rule 23(a)(1)).**

43.   The Illinois Class and Subclasses are so numerous that joinder of all members is impracticable. Illinois Plaintiff are informed and believe, and on that basis allege, that Life Time employed hundreds of persons who satisfy the definition of the Illinois Class or Subclasses.

**2.**   **Existence of Common Questions of Law and Fact (Rule 23(a)(2)).**

44.   Common questions of law and fact exist as to the Illinois Plaintiff and members of the Illinois Class or Subclasses including, but not limited to, the following:

a.  Whether Life Time unlawfully failed to pay members of the Illinois Class or Illinois Minimum Wage Subclass the minimum wage in violation of the Illinois Minimum Wage Law ("IMWL"), 820 ILCSv105/1, *et seq*.;

b.  Whether Life Time unlawfully failed to pay members of the Illinois Class or Illinois Overtime Subclass overtime compensation in violation of the Illinois Wage Payment and Collection Act (820 ILCS § 115/1, *et seq*.;

c.  Whether Life Time unlawfully failed to keep and maintain accurate records of the hours worked by members of the Illinois Class or Subclasses as required by applicable law; and

d.  Whether Life Time unlawfully deducted business costs, uniform costs, prior earned wages, and shortages in violation of the IWPCA and/or IMWL.

e.  The damages sustained and the proper measure of restitution recoverable by members of the Illinois Class or Subclasses.

**3.    Typicality (Rule 23(a)(3)).**

45.   Plaintiff's claims are typical of the members of the Illinois Class' or Subclasses' claims.  The Plaintiff, like other members of the Illinois Class or Subclasses, was subjected to Life Time's illegal scheme to maximize profits by depriving Personal Trainers of the basic minimum wage and overtime compensation.

**4.    Adequacy (Rule 23(a)(4)).**

46.   Plaintiff will fairly and adequately represent and protect the interests of the members of the Illinois Class or Subclasses.  The Plaintiff's retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation.

**5.    Injunctive and Declaratory Relief (Rule 23(b)(2)).**

47.   Class certification of the Rule 23 claims is appropriate pursuant to Rule 23(b)(2) because Life Time acted or refused to act on grounds generally applicable to the members of the

Illinois Class or Subclasses, making appropriate declaratory relief with respect to the members of the Illinois Class or Subclasses as a whole.

### 6. Predominance and Superiority of Class Action (Rule 23(b)(3)).

48. Class certification of the Rule 23 claims is also appropriate under Rule 23(b)(3) because questions of law and fact common to members of the Illinois Class or Subclasses predominate over any questions affecting only individual members of those classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Life Time's common and uniform policies and practices illegally deprived all Personal Trainers of wages; thus, making the question of liability and damages much more manageable and efficient to resolve in a class action, compared to hundreds of individual trials. The damages suffered by individual members of the Illinois Class or Subclasses are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Life Time's practices.

49. The Plaintiff intends to send notice to all members of the Illinois Class, Illinois Vacation Class or Subclasses to the extent required by Rule 23.

### VII. CLAIMS FOR RELIEF

**A. First Claim for Relief Brought by Plaintiff, on Behalf of Himself And the FLSA Class, Against Defendants For Illegally Deducting Business Costs, Uniforms, Prior Earned Wages, And Losses From Wages (29 U.S.C. § 206; 29 C.F.R. § 531.35), Failure to Pay The Minimum Wage (29 U.S.C. § 206), And For Failure to Pay Overtime 29 U.S.C. §§ 201, *et seq.*).**

50. Plaintiff realleges and incorporate by this reference each of the proceeding and foregoing paragraphs as if fully set forth herein.

51. At all relevant times, Defendants were "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants employed "employee[s]," including

Plaintiff and each member of the FLSA Class. At all relevant times, Defendants had gross operating revenues in excess of $500,000. Attached hereto as Exhibit A is the Consent to Join Forms signed by Plaintiff in this action pursuant to § 16(b) of the FLSA, 29 U.S.C. §§ 216(b) and 256. Other individuals have signed consent forms and joined as Plaintiff on this claim (also in Exhibit A). Plaintiff anticipate that more will be filed in the future.

52. The FLSA is the nation's basic law governing wages and hours of work, sets the minimum wage and contains standards as to when employers must pay overtime. Code of Federal Regulations § 531.35 provides that employers must pay all statutorily-required minimum wage and overtime premium finally and unconditionally, or "free and clear." The FLSA requires each covered employer such as Defendants, to compensate all nonexempt employees at a rate of not less than the federal minimum wage during the FLSA Class Period. The FLSA also requires each covered employer, such as Defendants, to compensate all nonexempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek

53. As set forth in detail above, Defendants engaged in a common practice or scheme to maximize profits by deducting business losses, uniform costs, past earned wages, and shortages from Personal Trainers' wages. Defendants also pitted managers against their Personal Trainers by deducting draws from the wages of managers. This is in turn resulted in managers instructing, threatening and coercing Personal Trainers to work off the clock and to under-report their hours. Thus, Personal Trainers' wages were not only being diluted by illegal deductions, but they were not being paid for all hours worked, including overtime.

54. Defendants are large corporations and should have known the requirements of the FLSA or, at least through reasonable research or investigation or communication with their corporate counsel or legal department, that their pay practices violated the FLSA. Defendants clearly have the resources to determine whether they are in compliance with the FLSA, but continued the illegal scheme due to profits, instead of considering the welfare of its employees. That is, Defendants made a rational decision, based on a cost/benefit analysis, that it was more

profitable to continue with the scheme, instead of changing the scheme to comply with the law. Therefore, Defendants' willfully, voluntarily, deliberately and intentionally violated the FLSA and did not have a "good faith" belief they were in compliance with the FLSA. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of the 29 U.S.C. § 255(a).

55.     By failing to pay Plaintiff, and the members of the FLSA Class, at a rate not less than the minimum wage, Defendants violated the FLSA, 29 U.S.C. § 206. By failing to compensate Plaintiff, and the members of the FLSA Class, at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendants violated the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a). By failing to record, report, and/or preserve records of hours worked by Plaintiff and the members of the FLSA Class, Defendants failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practice of employment, in violation of the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

56.     Plaintiff and the members of the FLSA Class are entitled to past-due wages, an equivalent amount in liquidated damages, costs, and attorneys' fees, as provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems just and proper.

**B.      Second Claim for Relief Brought by Plaintiff, on Behalf of himself and the Illinois Personal Trainer Class, Against Defendants for Failing to Provide Accurate Wage Statements and for Failure to notify employees of the rate of pay at the time of hiring in Violation of Illinois law (IWPCA)**

57.     Plaintiff realleges and incorporates by this reference each of the preceding and foregoing paragraphs as if fully set forth herein.

58.     Defendants knowingly and intentionally failed to provide accurate, itemized wage statements including, *inter alia*, total hours worked and applicable hourly rates for each hour

worked, to Plaintiff and the members of the Illinois IWPCA Class or Illinois Wage Statement Subclass in accordance with the IWPCA.

59.     820 ILCS 115 et. al. requires employers to notify employees of the rate of pay at the time of hiring and to provide accurate wage statements to employees.

60.     At the outset, Defendants have failed to comply with their obligation to keep and maintain accurate records of all the hours worked by its Personal Trainers in violation of the FLSA and the IWPCA. Such failure caused Plaintiff and members of the Illinois Class or Illinois Wage Statement Subclass to suffer "injury" by, among other things, impeding them from knowing the amount of wages to which they are and were entitled and precluding them from knowing or determining what deductions were made from the Personal Trainers' gross wages.

61.     Plaintiff and members of the Illinois Class are entitled to seek injunctive relief requiring Defendants to comply with the IWPCA.

**C.      Third Claim for Relief Brought by Plaintiff, on Behalf of himself and the Illinois Personal Trainer Class, Against Defendants for Illegally Deducting Business Losses, uniform costs, prior earned wages, and Shortages from Wages in Violation of Illinois Law (820 ILCS 115/9).**

62.     Plaintiff realleges and incorporate by this reference each of the proceeding and foregoing paragraphs as if fully set forth herein.

63.     820 ILCS 115/9 states in relevant part, "deductions by employers from wages or final compensation are prohibited unless such deductions are 1) required by law; 2) to the benefit of the employee; 3) in response to a valid wage assignment or wage deduction order; or 4) made with the express written consent of the employee, given freely at the time the deduction is made."

64.     During the IWPCA Class Period, Defendants engaged in a pattern, policy and practice of deducting minimum-wage draws and business losses and shortages from the wages of Personal Trainers and continue to discourage and dissuade them from reporting all hours worked at the expense of holding their department head or coordinators "personally

Page 17

liable" for any pay period during which Defendants have to pay the Trainers a draw. These deductions resulted in the illegal forfeiture of wages.

65.     Illinois law requires all employees to be paid at the agreed hourly rate for all hours actually caused or suffered to work, and an overtime rate, as proscribed by law for hours exceeding eight hours in a work day and/or hours exceeding 40 hours in a work week.

66.     By engaging in this automatic deduction policy and practice, Defendants were able to skim wages from employees for those pay periods during which Defendants improperly deducted against their wages earned. This resulted, on many occasions, in reduced hourly pay, nonpayment of the minimum wage, and unpaid overtime because the wages were so diluted that Personal Trainers were making less than the minimum wage and not being paid overtime at the correct rate of pay. By use of this system, thousands of dollars of wages, both at regular rates of pay and at the employee's requisite overtime rate of pay were illegally deducted and caused to be forfeited by Defendants' actions.

67.     This practice violates IWPCA by operating as an improper wage deduction and by failing in the employer's non-delegable duty to accurately record all hours worked.

68.     The result of the policy and practice caused damage in the underpayment of regular and overtime wages to himself and the proposed class and subclasses in an amount according to proof.

69.     The underpayment of wages is fixed and ascertainable on a classwide basis such that prejudgment interest on those wages is recoverable.

70.     The underpayment of wages and illegal deductions by their employer also entitles Plaintiff and the proposed Illinois Unlawful Deduction Subclass to attorneys' fees as permitted by IWPCA.

71.     In addition, if Plaintiff succeeds in enforcing these rights affecting the public interest, then attorneys' fees may be awarded to Plaintiff and against Defendants under and other applicable law in part because:

   a.     A successful outcome in this action will result in the enforcement of

important rights affecting the public interest by requiring Defendants to comply with the wage and hour laws and Illinois' unfair business practice law;

b.   This action will result in a significant benefit to Plaintiff, the Plaintiff Classes, and the general public by bringing to a halt unlawful, unfair, deceptive, and misleading activity and by causing the return of ill-gotten gains obtained by Defendants;

c.   Unless this action is prosecuted, members of the Plaintiff Classes and general public will not recover those monies, and many of Defendants' employees would not be aware that they were victimized by Defendants' wrongful acts and practices;

d.   Unless this action is prosecuted, Defendants will continue to mislead its employees about the true nature of their rights and remedies under the wage and hour laws; and

e.   An award of attorneys' fees and costs is necessary for the prosecution of this action and will result in a benefit to Plaintiff, the Plaintiff Classes, and to consumers in general by preventing Defendants from continuing to circumvent the wage and hour statutes and frustrate the long-standing recognition by the Illinois legislature and the courts that such statutes, as pled herein, are not merely a matter of private concern between employer and employee to be eviscerated by considerations of waiver, contributory negligence, good or bad faith, and private agreements.  Rather, the wage and hour statutes have been described as a matter of public concern, were designed to provide minimum substantive guarantees to individual workers, and are essential to public welfare.

**D.    Fourth Claim for Relief Brought by Plaintiff, on Behalf of himself and the Illinois Personal Trainer Class, Against Defendants for Violating Illinois' Minimum Wage Requirements (820 ILCS 105 et. al.).**

72.    Plaintiff realleges and incorporates by this reference each of the preceding and foregoing paragraphs as if fully set forth herein.

73.    In addition to the FLSA, Plaintiff seeks to represent the proposed Rule 23 Illinois Class or Illinois Minimum Wage Subclass as a basis to enforce equal or greater protections for wages owed that are offered by various State labor laws and local regulations as set forth above, for the Illinois Class.  Because the practices alleged herein are uniform, systematic and continuous and affect each member of the Illinois Class in a legally identical way, Illinois Plaintiff, at the appropriate time will move to certify the Rule 23 Illinois Class and/or Illinois Minimum Wage Subclass to the extent permitted by Rule 23.

74.    Illinois Plaintiff and the proposed Illinois Class were at all times subject to state laws and regulations protecting the employees' entitlement to be paid and presumption to be paid the state minimum wage for hours worked.

75.    Illinois law requires employers, such as Defendants, to pay minimum wage compensation to all nonexempt employees for each and every hour worked.  Illinois employees are entitled to wages and compensation for work performed, at the legal rate, including straight time, overtime, and double time.

76.    An Illinois employee who has not been paid the legal wage may recover the unpaid balance and together with attorney's fees and costs of suit, as well as liquidated damages in an amount equal to the wages unpaid and interest thereon.

77.    At all relevant times herein, Defendants were required to compensate Illinois Plaintiff and the members of the Illinois Class for all hours worked.

78.    By engaging in the time automatic deduction policy and practice of forcing Personal Trainers to work off the clock, Defendants were able to skim wages from employees for those pay periods during which minimum wage draws and business losses were deducted

from the wages of the Personal Trainers, and for those workdays Personal Trainers worked off the clock. This resulted, on many occasions, in reduced hourly pay and hence violation of the minimum wage requirements. By use of this system, hundreds if not thousands, of dollars of wages, were illegally deducted from the wages of Plaintiff and the Illinois Minimum Wage Subclass, or they were not paid at all. By the course of conduct set forth above, Defendants violated the minimum wage requirements as set forth in Illinois Labor Code § 1194.

79. Illinois Plaintiff is informed and believes and based thereupon allege that the result of the policy and practice caused damage in the nonpayment of minimum wages to himself and the proposed Illinois Class or Illinois Minimum Wage Subclass in an amount according to proof at trial.

80. Illinois Plaintiff is informed and believes that the nonpayment of wages is fixed and ascertainable on a classwide basis such that prejudgment interest on those wages is recoverable.

81. Illinois Plaintiff is informed and believes that the nonpayment of minimum wages for all hours worked also entitles Illinois Plaintiff and the proposed Illinois Class or Illinois Minimum Wage Subclass to attorneys' fees and costs, liquidated damages in an amount equal to the amount unlawfully unpaid according to Labor Code § 1194.2.

**E.** **Fifth Claim for Relief Brought by Illinois Plaintiff, on Behalf of himself and the Illinois Class, Against Defendants for Violating Illinois' Overtime Laws (IMWL).**

82. Plaintiff realleges and incorporates by this reference each of the preceding and foregoing paragraphs as if fully set forth herein.

83. In addition to the FLSA, Illinois Plaintiff seeks to represent the proposed Illinois Class or Illinois Overtime Subclass as a basis to enforce equal or greater protections for wages owed that are offered by State labor laws and local regulations as set forth above, for the Illinois Class. Because the practices alleged herein are uniform, systematic and continuous and affect each proposed member of the Illinois Class in a legally identical way, Illinois Plaintiff, at the

appropriate time will move to certify the Illinois Class or Illinois Overtime Subclass to the extent permitted by Rule 23.

84.     Illinois Plaintiff and the proposed Illinois Class were at all times subject to state laws and regulations protecting the employees' entitlement to be paid and presumption to be paid overtime wages for requisite hours worked beyond a normal work day or a normal work week, as specified, without limitation, by IMWL and applicable Illinois Code of Regulations.  Neither the "Outside Salesperson" or "Inside Salesperson" exemptions to overtime apply to the Personal Trainers.

85.     During the Illinois Time Period, the Personal Trainers did not customarily and regularly work *more than half of their working time* away from the fitness centers selling services or products to customers.  The Trainers worked inside the fitness centers primarily engaged in training individuals or clients and keeping the fitness centers clean.  In addition, because Defendants illegally deducted draws and other business losses from the wages of the Personal Trainers, their regular rate of pay fell below 1½ times the minimum wage and their commissions earned did not constitute more than 50% of their compensation.  Accordingly, the Personal Trainers are entitled to overtime during the Relevant Time Periods.

86.     Illinois law requires employers, such as Defendants, to pay overtime compensation to all nonexempt employees for all hours worked over 40 hours per week, or over 8 hours per day. IMWL establishes the fundamental right of all employees in the State of Illinois to be paid wages, including straight time and overtime, in a timely fashion for their work.  This precludes any waiver for unpaid due and owing wages that remain unpaid at the time of separation.

87.     As set forth above, Illinois Plaintiff and the members of the Illinois Class were entitled to be paid overtime compensation for all overtime hours worked.  Illinois Plaintiff was regularly required to work overtime during the proposed Illinois Class Period but was denied payment of overtime or premium wages.

88.     Throughout the Illinois Class Period, Illinois Plaintiff and the members of the Illinois Class worked in excess of 8 hours in a workday and/or 40 hours in a workweek.

89.     During the Illinois Class Period, Defendants did not pay Illinois Plaintiff and members of the Illinois Class overtime pay for overtime hours worked.

90.     As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Illinois Plaintiff and members of the Illinois Class have sustained damages, including loss of earnings for hours of overtime worked on behalf of Defendants in an amount to be established at trial, prejudgment interest, and costs and attorneys' fees, pursuant to statute and other applicable law.

**F.     Sixth Claim for Relief Brought by Illinois Plaintiff, on Behalf of himself and The Illinois Vacation Class, Against Defendants for Violating Illinois's Prohibition Against the Forfeiture of Vested Vacation Wages (IWPCA).**

91.     Plaintiff realleges and incorporate by this reference each of the foregoing paragraphs as if fully set forth herein.

92.     820 ILCS 115/5 provides that, except in collective bargaining agreements, accrued vacation must be paid to separated employees as part of final compensation.

93.     During the proposed Illinois Class Period, Defendants engaged in patterns, policies and practices of forfeiting earned and vested vacation earnings from the wages of the members of the Illinois Vacation Wages Subclass at the end of each calendar year.

94.     By engaging in this illegal forfeiture policy and practice, Defendants were able to skim wages from employees for each calendar year in which they earned vacation days but did not use at the end of the calendar year.  In addition, Defendants did not implement a policy, practice, or procedure to allow for employees to recapture the lost vacation earnings when it was improperly deducted from their total vacation days earned, but not used, during the Illinois Class Period.  By use of this illegal system, thousands of dollars were forfeited by Defendants' actions.

95.     Illinois Plaintiff is informed and believe that this illegal vacation policy and practice violates 820 ILCS 115/5 by operating as a forfeiture of vested vacation wages.

96.     Illinois Plaintiff is informed and believes and based thereupon alleges that the

result of this policy and practice caused damage in the underpayment of regular wages to members of the Vacation Wages Subclass in an amount according to proof.

97.     Illinois Plaintiff is informed and believes that the underpayment of wages is fixed and ascertainable on a classwide basis such that prejudgment interest on wages is recoverable.

98.     Illinois Plaintiff is informed and believes that the underpayment of wages and illegal forfeiture by Defendants also entitle Illinois Plaintiff and members of the Vacation Wages Subclass to attorneys' fees as permitted by the IWPCA.

99.     In addition, if Illinois Plaintiff succeeds in enforcing these rights affecting the public interest, then attorneys' fees may be awarded to Illinois Plaintiff and the members of the Vacation Wages Subclass and against Defendants under IWPCA.

      a.      A successful outcome in this action will result in enforcement of important rights affecting the public interest by requiring Defendants to comply with the wage-and-hour laws and Illinois's unfair business practice law;

      b.      This action will result in a significant benefit to Illinois Plaintiff, the members of the Vacation Wage Subclass, and the general public by bringing to a halt unlawful, unfair, deceptive, and misleading activity and by causing the return of ill-gotten gains obtained by Defendants;

      c.      Unless this action is prosecuted, members of the Illinois Vacation Wage Subclass and general public will not recover those monies, and many of Defendants' employees would not be aware that they were victimized by Defendants' wrongful acts and practices;

      d.      Unless this action is prosecuted, Defendants will continue to mislead its employees about the true nature of their rights and remedies under the wage and hour laws; and

      e.      An award of attorneys' fees and costs is necessary for the prosecution

of this action and will result in a benefit to Illinois Plaintiff, the Illinois Vacation Wages Subclass, and to consumers in general by preventing Defendants from continuing to circumvent the wage and hour statues and frustrate the substantive guarantees to individual workers.

**J.      Seventh Claim for Relief Brought by Illinois Plaintiff, on Behalf of Himself and the Illinois Class, Against Defendants for Violating Illinois' Minimum Wage Law ("IMWL") (820 ILCSv105/1, *et seq*.).**

118.    Plaintiff realleges and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

119.    As alleged above, Illinois Plaintiff and members of the Illinois Class were consistently and uniformly not paid the minimum wage for all the work they performed during the course of their employment with Defendants.  Defendants' policy and practice was to force Illinois Plaintiff and members of the Illinois Class to work off the clock so Defendants would not have to pay them draw.  Defendants' unlawful conduct was neither inadvertent, nor *de minimis*, but widespread, repeated and part of a pattern and practice of conduct affecting Illinois Plaintiff and all members of the Illinois Class.

120.    Defendants permitted, consented, and had actual or constructive knowledge that the Illinois Plaintiff and members of the Illinois Class were working off the clock because Defendants implemented the policy and practice of disciplining and punishing managers when Personal Trainers met the draw by deducting the draw from their wages.  This practice led to managers forcing and threatening Personal Trainers not to clock in and to work off the clock unless they were servicing a client.

121.    As a result of the foregoing, Illinois Plaintiff and the members of the Illinois Class have been damaged in an amount to be determined at trial.  The IMWL contains a three-year statute of limitations regardless of whether the violation was willful (the "Illinois Class Period).  *See* 820 ILCS 105/12(a).  Therefore, the Illinois Plaintiff and members of the Illinois Class are entitled to back wages and attorneys' fees and costs.

1
2
3
4
5

**K.** **Eighth Claim for Relief Brought by Illinois Plaintiff, on Behalf of himself and the Illinois Class, Against Defendants for failing to pay Plaintiff and the Illinois Class for "every hour worked" as promised in Defendant's Incentive Compensation Plan and in Violation of Illinois' Wage Payment and Collection Act ("IWPCA") (820 ILCS § 115/1, *et seq*.).**

6
7

122.    Plaintiff realleges and incorporates by reference all the preceding paragraphs, as if fully set forth herein.

8
9

123.    Defendants Incentive Compensation Plan promises to pay Plaintiff and the members of the Illinois Class for *every hour worked*.

10
11
12

124.    Illinois Plaintiff and members of the Illinois Class were not paid their wages for a significant amount of work for which were promised to be paid and that was performed in the course of their employment with Defendants.

13
14
15
16
17
18

125.    At all relevant times herein, Defendants were "employer[s]" as defined in the IWPCA, 820 ILCS 115/1, *et seq*., and Illinois Plaintiff and similarly situated persons were "employee[s]" within the meaning of the IWPCA. Defendants were at all times aware of their obligation to pay its hourly employees for all time they worked, including unused vacation time, and are aware of the compensation actually paid to Illinois Plaintiff and the Illinois Class.

19
20
21
22
23
24
25

126.    Defendants agreed to compensate its employees, including Illinois Plaintiff and members of the Illinois Class, for all time worked. However, Defendants instituted practices that resulted in its employees working certain time without compensation. The Illinois Plaintiff and members of the Illinois Class were instructed by their supervisors to "punch out," but to continue to work off the clock, or were unknowingly clocked out, or their time was reduced by supervisors. In any event, the result was that Defendants failed to compensate Illinois Plaintiff and the members of the Illinois Class for all the time they worked, including overtime.

26
27

127.    Therefore, Illinois Plaintiff and the members of the Illinois Class are entitled to unpaid wages, and attorneys' fees and costs.

28

**VIII.** <u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff, on behalf of himself and all members of the Plaintiff Classes they seek to represent, pray for relief as follows:

1. For an order certifying that the First Claim for Relief of this Complaint may be maintained as a collective action pursuant to 29 U.S.C. § 216(b) and that prompt notice of this action be issued to potential members of the opt-in FLSA Class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims;

2. For an order certifying that the Second through Eighth claims for Relief be maintained as class actions pursuant to Rule 23 on behalf of the members of the Illinois Classes and/or Illinois Subclasses who were either employed or who performed work in the State of Illinois during the Illinois Class Period and that notice of the pendency of this action be provided to members of the Illinois Class and/or Subclasses;

3. Designation of Plaintiff as the Class Representative for the FLSA Class;

4. Designation of the Illinois Plaintiff as the Class Representatives for the Illinois Class and/or Subclasses;

5. Designation of the Illinois Plaintiff as the Class Representatives for the Illinois Classes and/or Subclasses;

6. Designation of Plaintiff' attorneys as Class Counsel for both the FLSA Class, Illinois Classes and/or Subclasses, and/or Illinois Classes and/or Subclasses;

7. A declaratory judgment that the practices complained of herein are unlawful under appropriate state law;

8. Appropriate equitable relief to remedy Defendants' violations of state law, including but not necessarily limited to an order enjoining Defendants from continuing its unlawful practices;

9. Restoration of all business losses, uniform costs, prior earned wages, and

shortages improperly deducted by Defendants;

10. For an award of unpaid minimum wages and liquidated damages in an amount equal to the amount unlawfully unpaid pursuant to the FLSA and Illinois Labor laws.

11. For an award of unpaid Federal minimum wages for each hour worked as required by the FLSA, 29 U.S.C. §206;

12. For an award of unpaid Illinois minimum wages for each hour worked as required by Illinois labor laws.

13. All unpaid overtime as calculated by the applicable provision of the FLSA, 29 U.S.C. §§ 201 *et seq.*, and applicable regulations promulgated in the Code of Federal Regulations and/or opinions and directives of the Department of Labor;

14. All appropriate state and federal statutory interest and penalties;

15. An award of compensatory damages to the extent available, liquidated damages pursuant to the FLSA, and restitution to be paid by Defendants according to proof;

16. Unpaid overtime premium compensation as provided by Illinois and Illinois law for overtime hours worked;

17. For an award of vested vacations wages that were forfeited by Defendants in violation of the Illinois Wage Payment and Collection Act;

18. Damages, penalties, interest, and Attorneys' fees pursuant to Illinois labor laws.

19. For an order that Defendants make restitution to the Illinois Plaintiff and the Illinois Classes due to its unlawful business practices, including unlawfully-collected compensation pursuant to Illinois labor laws.

20. Pre-Judgment and Post-Judgment interest, as provided by law;

21. Such other equitable relief as the Court may deem just and proper; and

22. Attorneys' fees and costs of suit, including expert fees and fees pursuant to Illinois Labor Laws, Illinois Code of Civil Procedure, Illinois Supreme Court

Rules, and other applicable state laws and as permitted by the FLSA.

IX.     **DEMAND FOR JURY TRIAL**

Plaintiff hereby demand a jury trial on all causes of action and claims with respect to which they each have a state and/or federal constitutional a right to jury trial.

Dated: February 28, 2017

Michael L. Fradin, Attorney at Law

By: /s/ *Michael L. Fradin*
   **Michael L. Fradin, Attorney at Law**

By: /s/ *Jerusalem F. Beligan*
   BRIAN D. CHASE (*pro hac vice pending*)
   JERUSALEM F. BELIGAN (*pro hac vice*)

By: /s/ *Branigan Robertson*
   BRANIGAN ROBERTSON (*pro hac vice*)
   BRANIGAN ROBERTSON, INC.

Attorneys for Plaintiff and Putative Classes